CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 15 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| CHRISTOPHER D. ELLIOTT, JR., | ) | CASE NO. 6:10CV00032 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 30, 2008 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

In a decision issued on January 15, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, March 1, 1997[1], and that he met the insured status requirements under the Act

---

[1] Although the Law Judge did not acknowledge this evidence, a review of the record reveals that plaintiff worked beyond his disability onset date. For example, he reported to the psychological evaluator that he last worked in January 2008. (R. 203.) Plaintiff reported to the consultative medical examiner that he last worked in 2007, at which time he cut wood and drove a truck. (R. 209.)

through September 30, 2005[2]. (R. 10.) The Law Judge determined plaintiff suffered the following severe impairments: anxiety, degenerative disc disease, and right knee tendonitis. (*Id.*) The Law Judge did not believe he had an impairment or combination of impairments which met or medically equaled a listed impairment. (R. 12.) The Law Judge found that plaintiff's medically determinable impairments reasonably could be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were "not credible" to the extent they were inconsistent with the Law Judge's determination of plaintiff's residual functional capacity ("RFC"). (R. 15.) The Law Judge further found that plaintiff maintained the RFC to perform unskilled, light work, except that he should not work in a setting that requires contact with the general public. (R. 14.) The Law Judge determined that this RFC precluded plaintiff from performing his past relevant work as a truck driver, but that other jobs exist in substantial numbers in the national economy that he could perform. (R. 17.) Ultimately, the Law Judge found plaintiff was not disabled under the Act. (R. 18.)

Plaintiff appealed the Law Judge's January 15, 2010 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The

---

[2] In order to qualify for disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, September 30, 2005. *See* 20 C.F.R. § 404.131(a).

regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

Plaintiff has filed a *pro se* brief which he has styled "Motion to Summarize Judgement and Reply to Defendant's Motion." (Dkt. No. 22.) This should be construed it as a motion for summary judgment and brief in support thereof. While plaintiff makes numerous assertions, it is difficult to discern plaintiff's precise legal arguments. Thus, the undersigned has performed a full review of the record and will assess whether the Law Judge's decision is supported by substantial evidence at each step in the sequential evaluation.

At step one in the sequential evaluation, the Law Judge found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, March 1, 1997. (R. 10.) The Law Judge determined plaintiff's anxiety, degenerative disc disease, and right knee tendonitis were severe impairments at step two in the sequential evaluation.[3] (*Id.*) The Law Judge's findings at these two steps were favorable to the plaintiff and are not in dispute. Moreover, they are supported by substantial evidence.

At step three in the sequential evaluation, the Law Judge found that plaintiff did not have an impairment or combination of impairments which met or medically equaled a listed

---

[3] A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

3

impairment. (R. 12.) A claimant bears the burden of proving that his impairments, alone or in combination, meet or equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting the claimant has the burden of showing that he or she has a medically severe impairment or combination of impairments and that the Act requires him to furnish medical evidence regarding his condition). For the reasons more fully set forth below, the undersigned concludes that the Law Judge's finding that plaintiff failed to meet his burden of establishing a listed impairment is supported by substantial evidence.

The Law Judge found that plaintiff's knee tendonitis did not meet Listing $1.02^4$ or Listing $1.08^5$. (R. 12-13.) The Law Judge noted that plaintiff did not have x-rays which reflect that he has an anatomical deformity. (R. 13.) Additionally, the consultative examiner found that he had a normal range of motion in his knee. (R. 207.) Thus, the Law Judge's finding that plaintiff did not meet Listing 1.02 or Listing 1.08 is supported by substantial evidence.

---

[4] Listing 1.02 refers to the major dysfunction of a joint(s) due to any cause. The Listing provides:
Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively; or
B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[5] Listing 1.08 refers to soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

The Law Judge assessed plaintiff's degenerative disc disease under Listing 1.04[6] and concluded that he did not meet the Listing. The Law Judge noted there was no evidence showing nerve root compression accompanied by motor loss, sensory loss, reflex loss, or positive straight leg raising tests in both sitting and supine positions. (R. 13.) The Law Judge further observed that there was no evidence of spinal arachnoiditis or stenosis. (*Id.*) These findings and the Law Judge's conclusion that plaintiff did not meet Listing 1.04 are supported by substantial evidence.

The Law Judge concluded that plaintiff's mental impairment did not meet or equal Listing 12.06[7]. (R. 13.) This finding, likewise, is supported by substantial evidence for several

---

[6] Listing 1.04 refers to disorders of the spine resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[7] Listing 12.06, referred to anxiety related disorders, provides:
In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; Or

reasons. Initially, the Law Judge found that plaintiff's activities of daily living were only mildly restricted. (*Id.*) Plaintiff reported to a consultative psychological examiner that he is able to take care of his activities of daily living without any assistance. (R. 204.) He further reported that he lives alone, has no problem dressing, bathing, caring for his hair, shaving, feeding himself, and using the toilet. (R. 123-124. 145-146). Plaintiff also revealed that he does not need special reminders to take care of his personal needs or take his medicine. (R. 125, 146.) He prepares his own meals, does laundry, cleans the house, and mows the law. (*Id.*) Plaintiff also drives a car and can go out alone. (R. 126, 148.)

The Law Judge did find that plaintiff suffered moderate difficulties in social functioning. (R. 13.) The evidence reveals that plaintiff reported he does not often spend time with others. (R. 128.) Even so, he reported that he is able to visit his father in the nursing home, he goes shopping in stores, and that changes in routine do not bother him. (R. 123, 146, 148, 151.) A consultative psychological examiner opined that there was no evidence that plaintiff would have difficulty interacting with peers and coworkers or responding appropriately to supervision. (R. 205.) The State agency record reviewing psychologist echoed this evidence by concluding that

---

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; And
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
Or
C. Resulting in complete inability to function independently outside the area of one's home.

plaintiff had no difficulties in maintaining social functioning. (R. 238.) Further, he opined that plaintiff was not significantly limited in the following areas: the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 243.)

The Law Judge found that plaintiff experienced only mild difficulties with regard to concentration, persistence or pace. (R. 13.) Plaintiff reported that he follows written instructions better than spoken instructions. (R. 128.) Plaintiff indicated that his ability to get along with authority figures is dependent upon the personality of other person. (R. 129.) He can count change, handle a savings account, and use a checkbook or money order. (R. 126.) Plaintiff is able to pay his own bills and his father's bills and can read the newspaper. (R. 124, 126-127, 146, 149.)

A consultative psychological examiner opined that plaintiff was able to understand, retain and follow instructions. (R. 205.) This consultative psychological examiner further opined that plaintiff retained the cognitive properties required to handle any benefits awarded to him. (*Id.*) She further opined that plaintiff's mental health condition did not compromise his ability to maintain concentration, persistence and pace. (*Id.*) A State agency record reviewing psychologist provided a corroborating opinion to the effect that plaintiff's ability to remember locations and work-like procedures was not significantly limited. (R. 242.)

7

The Law Judge determined that plaintiff had experienced no episodes of decompensation of an extended duration because there was no evidence of such. (R. 14.) The Law Judge further found no evidence to suggest that a minimal increase in mental demands or environmental stress would cause him to decompensate, that he had an inability to function outside of a highly supportive living arrangement, or that he had a complete inability to function outside of his home. (*Id.*) These findings are supported by the State agency record reviewing psychologist and the record as a whole. (R. 238.)

Turning to the next step in the sequential evaluation, the Law Judge found that plaintiff retained the RFC to perform unskilled, light work[8], except that he should not work in a setting that requires contact with the general public. (R. 14.) This finding is supported by the opinions offered by consultative psychological examiner Loretta E. Braxton, Ph.D., a licensed psychologist. Dr. Braxton evaluated plaintiff on September 2, 2008 and noted that plaintiff reported a history of anxiety and depression. (R. 205.) The psychologist opined that he suffered with a generalized anxiety disorder and a depressive disorder NOS. (*Id.*) She determined that plaintiff's global assessment of functioning ("GAF") was 58[9]. (*Id.*) Dr. Braxton opined that plaintiff's mental health would not compromise his capacity to perform simple repetitive tasks and maintain concentration, persistence and pace. (*Id.*) She concluded that plaintiff was capable of understanding, retaining and following instructions. (*Id.*) Dr. Braxton further concluded that

---

[8]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting and carrying of items weighing up to 10 pounds. If a person can perform light work, he can also perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

[9] GAF ratings are subjective determinations based on a scale of zero to one hundred of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders 32 (4th ed. 2000) ("DSM-IV Manual"). A GAF score of 58 indicates "moderate" symptoms or difficulties. *Id.* at 34.

there was no evidence that plaintiff would have difficulty interacting with his peers and coworkers and responding appropriately to supervision. (*Id.*)

The Law Judge's RFC finding is also supported by the opinions offered by consultative examiner Christopher Newell, M.D. (R. 207-211.) Dr. Newell examined plaintiff on September 16, 2008. At that time, he determined that plaintiff suffered with depression/anxiety, left trapezius strain, and lumbago. (R. 211.) The physician opined that plaintiff could stand and walk six to eight hours in an eight-hour workday. (R. 211.) He also found plaintiff able to lift/carry twenty pounds frequently and fifty pounds occasionally. (*Id.*) The physician further opined that plaintiff had no manipulative, visual or communicative limitations. (*Id.*) Finally, Dr. Newell noted that plaintiff did not require an assistive device to ambulate, and he had no restrictions on his ability to sit. (*Id.*)

The Law Judge's RFC finding is also supported by the opinions offered by the State agency record reviewing physicians. Michael Cole, D.O. evaluated plaintiff's medical records and completed a physical assessment. (R. 248-254.) He noted plaintiff had the following diagnoses: degenerative joint disease of the lumbar spine/lumbago and right knee patellar tendonitis. (R. 248.) The physician opined that plaintiff could lift and/or carry (including upward pulling) twenty pounds occasionally and ten pounds frequently. (R. 249.) Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday. (*Id.*) Plaintiff could sit (with normal breaks) for a total of about six hours in an eight-hour workday. (*Id.*) Plaintiff's ability to push and/or pull (including the operation of hand/foot controls) was unlimited, other than the limitations on his ability to lift and/or carry. (*Id.*) Dr. Cole believed plaintiff could frequently balance and frequently climb ramps, stairs, ladders,

ropes or scaffolds. (R. 250.) The physician concluded that plaintiff could occasionally stoop, kneel, crouch, or crawl. (*Id.*) He further concluded that plaintiff had no manipulative, visual, communicative, or environmental limitations. (R. 250-251.) In sum, Dr. Cole concluded that plaintiff maintained the physical capacity to perform light exertional work.

A second State agency record reviewing physician, Robert McGuffin, M.D., also concluded that plaintiff could perform light exertional work. (R. 262-266.) Thus, the undersigned concludes that the Law Judge's finding that plaintiff was able to perform light exertional work is supported by substantial evidence.

At step four, the Law Judge concluded that plaintiff's RFC precluded him from performing his past relevant work as a truck driver. (R. 17.) The Law Judge's finding at this step was favorable to the plaintiff. Moreover, this finding is supported by substantial evidence.

At the final step in the sequential evaluation, the Law Judge found that there were other jobs available in the national economy that plaintiff could perform. (*Id.*) Based on evidence provided by a vocational expert ("VE") at the hearing, the Law Judge found that plaintiff could work as an assembler, mail clerk, and an office cleaner, all jobs available in the national economy. (R. 18, 40.) The undersigned is of the view that the testimony of the VE accounted for all relevant evidence, and that the Law Judge's decision to accept the testimony of the VE is supported by substantial evidence.

Having determined that the Law Judge's findings at each step of the sequential evaluation are supported by substantial evidence, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record and mail a copy to the plaintiff.

ENTERED: _____
U.S. Magistrate Judge

7/15/11
Date